UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| HOPE WILEY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:11-CV-1241-B |
| | § | |
| U.S. BANK, N.A., AS SUCCESSOR | § | |
| TRUSTEE TO BANK OF AMERICA, | § | |
| N.A., AS SUCCESSOR TRUSTEE | § | |
| TO LASALLE BANK, N.A., AS | § | |
| TRUSTEE FOR THE HOLDERS OF | § | |
| MERRILL LYNCH MORTGAGE | § | |
| INVESTORS TRUST, MORTGAGE | § | |
| LOAN ASSET-BACKED | § | |
| CERTIFICATES, SERIES 20056-RM2, | § | |
| BANK OF AMERICA, N.A., and | § | |
| BAC HOME LOANS SERVICING, | § | |
| L.P., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants U.S. Bank, N.A., Bank of America, N.A., and BAC Home Loans Servicing, L.P.'s Motion for Summary Judgment (doc. 21). For the following reasons, the Court **GRANTS** the Motion.

## I.

## BACKGROUND[1]

This case arises out of a residential mortgage loan and a pending foreclosure sale. On or about

---

[1] The facts are derived from Plaintiff's Amended Complaint (doc. 19), the parties' pleadings, and from the evidence contained in the summary judgment record. Unless characterized as a contention by one of the parties, these facts are undisputed.

March 29, 2006, Plaintiff Hope Wiley ("Plaintiff" or "Wiley") executed an adjustable rate promissory note (the "Note") to purchase the real property located at 1611 Buoy Drive, Glenn Heights, Texas 75154 (the "Property"). Pl.'s Am. Compl. ¶¶ 8–10. The Note was made payable to Resmae Mortgage Corporation ("Resmae"). *Id.* at ¶ 10. The Note was secured by a deed of trust (the "Deed of Trust") naming Mortgage Electronic Registration Systems, Inc. ("MERS") as beneficiary and nominee for Resmae. *Id.*; Def.'s App. Ex. A, at 9. MERS then assigned the Deed of Trust to Defendant U.S. Bank, N.A ("U.S. Bank"). Pl.'s Am. Compl. ¶ 10.

In May 2006, Wilshire Credit Corporation ("Wilshire") began serving as loan servicer of Wiley's mortgage loan. Pl.'s Am. Compl. ¶ 11. In early 2008, Plaintiff began to challenge Wilshire's management of her escrow account and the amount of the monthly payments due on the Note.[2] *Id.* In June 2008, Plaintiff fell behind on her mortgage payments. *Id.* at ¶ 12. In 2008, Plaintiff applied for, and received, a temporary loan modification. *Id.* In 2009, Plaintiff applied for a loan modification through the Making Homes Affordable ("MHA") program. *Id.* at ¶ 13. Plaintiff successfully made payments on a three-month Home Affordable Modification Program ("HAMP") trial plan from October 2009 through January 2010, and continued to make payments on her mortgage loan through February 2010. *Id.*; Pl.'s App. Ex. 1C.

In February 2010, Wilshire informed Wiley that the servicing rights to her mortgage loan were transferred to Defendant BAC Home Loans Servicing, LP, a subsidiary of Defendant Bank of America, N.A. (collectively "BOA"). Pl.'s Am. Compl. ¶ 14; Pl.'s App. Ex. 1D. Plaintiff alleges her

---

[2] Plaintiff alleges a series of facts alleging Wilshire mismanaged the servicing of her mortgage loan. Plaintiff does not, however, name Wilshire as a defendant in this matter; nor does Plaintiff rely on facts related to Wilshire in fashioning her causes of action in her Amended Complaint.

monthly payment under the trial HAMP program was $1,140.30 per month, but when BOA began servicing her loan in March 2010, BOA instructed her to pay only $1,030.98 per month. Pl.'s Am. Compl. ¶ 14; Pl.'s App. Ex. 1C. In April 2010, Plaintiff received a statement from BOA instructing Plaintiff that she could continue to pay $1,030.98, the amount based on her original loan, or pay $1,395.25, the amount based on the HAMP trial plan. Pl.'s Am. Compl. ¶ 15; Pl.'s App. Ex. 1E. Wiley continued to make monthly payments in the amount of $1,030.98. Pl.'s Am. Compl. ¶ 15. According to Wiley, in June 2010, BOA instructed her that she would need to reapply for a HAMP trial plan through the MHA program. *Id.* Plaintiff continued to make monthly payments in the amount of $1,030.98 through August 2010. *Id.* According to Plaintiff, in August 2010, a BOA representative instructed her to stop making monthly payments. *Id.* Throughout August 2010, Wiley and BOA continued to communicate and exchange information regarding documents necessary for Wiley's enrollment in a second HAMP trial plan. *Id.*

According to Wiley, on September 2, 2010 she received a telephone call from a BOA representative who informed her that her request for a loan modification had been approved. *Id.* at ¶ 16. Plaintiff then alleges she received a "reinstatement quote" that required her to pay $15,915.88 by September 24, 2010 to bring her account current and was told by BOA she had not been approved for a loan modification. *Id.* Plaintiff disputed the status of her modification and continued to communicate with BOA. *Id.* at ¶¶ 16–17.

In November 2010, Plaintiff enrolled in BOA's "in-house" loan modification program and was instructed to recommence making monthly mortgage payments. *Id.* at ¶ 17. Wiley then began making monthly mortgage payments in January 2011. *Id.* During this time, Wiley alleges BOA mismanaged her account in a number of ways, including: failing to contact her using the correct

3

phone number, failing to apply payments to her account, failing to provide adequate payment history, failing to recognize her prior attempts at loan modification, and providing documents that inaccurately reflected the amount needed to bring her account current. *Id.* at ¶¶ 18–19. Plaintiff then received a letter dated January 4, 2011 informing her that she was in default and a payment in the amount of $18,870.24 was required to bring her account current. *Id.* at ¶ 19. Plaintiff continued to make loan payments through May 2011. The Property was then scheduled for a foreclosure sale, to take place on June 7, 2011. Plaintiff alleges she was informed by a BOA representative that BOA had not provided a proper notice of sale. *Id.* Plaintiff currently remains in possession of the Property. *Id.* at ¶ 9.

On June 1, 2011, Wiley filed the present suit against Defendants in Dallas County state court. Defendants removed the case to this Court on June 9, 2011. On September 16, 2011, Plaintiff filed an Amended Complaint (doc. 19) stating causes of action for (1) breach of contract and anticipatory breach of contract, (2) unreasonable collection efforts, (3) violations of the Texas Debt Collection Practices Act, and (4) negligent misrepresentation and gross negligence. Plaintiff also seeks relief in the form of an accounting and declaratory judgment. On November 3, 2011, Defendants moved for summary judgment on all of Plaintiff's claims. The briefing on Defendants' Motion for Summary Judgment is complete, and ripe for decision.

## II.

## LEGAL STANDARD

Summary judgment is appropriate when the pleadings and record evidence show no genuine issue of material fact exists and that the movant is entitled to summary judgment as a matter of law. Fed. R. Civ. P. 56(c); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Only disputes

4

about material facts preclude a grant of summary judgment, and "the substantive law will identify which facts are material." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

The movant bears the burden of proving no genuine issue of material fact exists. *Latimer v. Smithkline & French Lab.*, 919 F.2d 301, 303 (5th Cir. 1990). Where the nonmovant bears the burden of proof at trial, the movant need not support its motion with evidence negating the nonmovant's case. Instead, the movant may satisfy its burden by pointing to the absence of evidence to support an essential element of the nonmovant's case. *Id*; *Little,* 37 F.3d at 1075.

Once the movant has met its burden, the nonmovant must show that summary judgment is not appropriate. *Little*, 37 F.3d at 1075 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). "This burden is not satisfied with 'some metaphysical doubt as to material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Id.* (citations omitted). Instead, the nonmoving party must go beyond the mere pleadings and "come forward with 'specific facts showing that there is a *genuine issue for trial.*'" *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (emphasis in original) (quoting Fed R. Civ. P. 56(e)); *see Celotex*, 477 U.S. at 324. The evidence presented by the nonmovant must "support each essential element of its claims on which it will bear the burden of proof at trial." *Munoz v. Orr*, 200 F.3d 291, 302 (5th Cir. 2000). In determining whether a genuine issue exists for trial, the Court will view all of the evidence in the light most favorable to the nonmovant. *Id.*

## III.

## ANALYSIS

A.    *Breach of Contract and Anticipatory Breach of Contract*

The Court turns first to Wiley's breach of contract and anticipatory breach of contract claims.

5

Plaintiff alleges Defendants breached the Note and Deed of Trust when Defendants (1) foreclosed without proper authority; (2) failed to provide required notices; (3) foreclosed after waiving any right to foreclose; (4) breached a duty of good faith and fair dealing; and (5) breached a unilateral contract.

The Court begins its analysis by reviewing the basic elements needed to prove breach of contract and anticipatory breach of contract in Texas. Under Texas law, the elements of a breach of contract action are "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Am. Gen. Life Ins. Co. v. Kirsch*, 378 F. App'x 379, 383 (5th Cir. 2010) (internal quotations omitted) (citing *Smith Int'l, Inc. v. Egle Group, LLC*, 490 F.3d 380, 387 (5th Cir. 2007)). The elements of an anticipatory breach of contract action are "(1) an absolute repudiation of the obligation; (2) a lack of just excuse for the repudiation; and (3) damage to the nonrepudiating party." *Swim v. Bank of America, N.A.*, No. 3:11-CV-1240-M, 2012 WL 170758, at *4 (N.D. Tex. Jan. 20, 2012) (citing *Gonzalez v. Denning*, 394 F.3d 388, 394 (5th Cir. 2004)). The party's intent to abandon a contractual obligation may be based on either words or actions, but such declaration must be expressed in positive and unconditional terms. *See King v. Wells Fargo Bank, N.A.*, No. 3-11-CV-0945-M-BD, 2012 WL 1205163, at *2 (N.D. Tex. March 20, 2012) (citing *Swim*, 2012 WL 170758, at *4). Defendants move for summary judgment on the grounds that Plaintiff has failed to show Defendants breached the contract or repudiated any obligation under the contract. Against this framework, each of Plaintiff's theories of recovery for breach of contract and anticipatory breach of contract are addressed in turn, below.

1.      *Authority to Foreclose*

Plaintiff maintains that Defendants breached the Deed of Trust when BOA attempted to proceed with a foreclosure sale because the foreclosure sale was predicated upon an invalid assignment of the Deed of Trust from MERS to U.S. Bank. Pl.'s Resp. 12–17. Defendants move for summary judgment on the basis that Plaintiff does not have standing to challenge the assignment of the Deed of Trust by MERS to U.S. Bank and the evidence provided illustrates BOA had proper authority to foreclose. Def.'s Br. 6–13. In support, Defendants submit that the language contained in the Note and Deed of Trust provide BOA with the authority to foreclose. *Id.*

A deed of trust is a mortgage with a power to sell on default and is governed by the same rules of interpretation that apply to contracts. *Starcrest Trust v. Berry*, 926 S.W.2d 343, 351–52 (Tex. App.–Austin 1996) (citing *Successors to the Interest of Rea–Glass, Inc. v. Allied Corp.*, 704 S.W.2d 387, 389 (Tex.App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.)). The deed of trust provides security for payment of a debt, usually evidenced by a note. *See* 30 Tex. Jur. 3d Deeds of Trust and Mortgages § 1 (2007). "Because the deed of trust or mortgage has no legal effect apart from the debt or obligation, any transfer of the deed of trust without the note automatically passes the debt." *DeFrancheschi v. Wells Fargo Bank, N.A.*, No. 4:10-CV-455-Y, 2011 WL 3875338, at *4 (N.D. Tex. Aug. 31, 2011).

Plaintiff admits MERS assigned the Deed of Trust to U.S. Bank on September 9, 2009. Pl.'s Resp. 12; Def.'s App. Ex. A, at 32. Plaintiff argues, however, that the assignment of the Deed of Trust was invalid because U.S. Bank never became a holder of the Note *and* the Deed of Trust, and the Deed of Trust and Note were improperly split. The summary judgment evidence demonstrates that MERS had the authority to assign the Deed of Trust to U.S. Bank and BOA had subsequent

authority to foreclose as mortgage servicer. In the Deed of Trust provided by Defendants and uncontested by Plaintiff, MERS is identified as "acting solely as a nominee for Lender and Lender's successors and assigns." Def.'s App. Ex. A, at 10. The Deed of Trust also provides that "[t]he beneficiary of this Security Instrument is MERS" and grants MERS "the right to foreclose and sell the Property." *Id.* at 11–12.

Under Texas law, in cases where "MERS is a beneficiary and nominee for both the originating lender and its successors and assigns by the express language in the Deed of Trust, the situation falls within an exception to the general rule that a party holding only the deed of trust cannot enforce the mortgage." *Eskridge v. Fed. Home Loan Mortg. Corp.*, No. W-10-CA-285, 2011 WL 2163989, at *5 (W.D. Tex. Feb. 24, 2011). Contrary to Plaintiff's "show-me-the-Note" and "split-Note" theories, MERS was not required to also transfer the Note to U.S. Bank in order for BOA—as mortgage servicer—to conduct a non-judicial foreclosure on behalf of U.S. Bank. *See Cannon v. JPMorgan Chase Bank, N.A.*, No. 4:11-CV-458, 2011 WL 6838615, at *4 (E.D. Tex. Nov. 16, 2011) (noting that there is no requirement in the Texas Property Code that either the mortgagee or mortgage servicer produce the original note or deed of trust before conducting a non-judicial foreclosure); *Mortberg v. Litton Loan Servicing, L.P.*, No. 4:10-CV-668, 2011 WL 4431946, at *8 (E.D. Tex. Aug. 30, 2011) ("[T]he fact that the note and deed of trust may have been split is immaterial to the ability to conduct foreclosure proceedings in Texas.").

Defendants have submitted evidence to show MERS transferred the Deed of Trust to U.S. Bank and had authority to do so. Defendants have also submitted evidence to show the servicing rights to the loan were assigned to BOA. Plaintiff has failed to demonstrate how either the assignment of the Deed of Trust to U.S. Bank or the assignment of servicing rights to BOA was

8

somehow otherwise invalid. For the foregoing reasons, the Court finds no genuine issue of material fact as to Plaintiff's theory that Defendants' breached the Deed of Trust by foreclosing without proper authority.[3]

2.      *Failure to Provide Notice*

Wiley also alleges Defendants breached the contract by failing to provide proper notice of default and notice of sale. Pl.'s Resp. 27–28. Plaintiff alleges the Deed of Trust subjects the parties to applicable laws—including the notice requirements contained in Section 51.002 of the Texas Property Code. Pl.'s Am. Compl. ¶ 27, 30; Def.'s App. Ex. A-3, at ¶ 16. Defendants move for summary judgment arguing that all required notices were provided. Def.'s Br. 14. In support, the Defendants submit a notice of default, and notice of foreclosure sale, which they maintain demonstrate their compliance with all relevant notice requirements in the Texas Property Code. Def.'s App. Ex. A-5, B-1.

Section 51.002 of the Texas Property Code sets forth the requirements for conducting a sale of real property under a contract lien. Section 51.002 requires mortgage servicers to provide the debtor with notice of default and opportunity to cure, 20 days in advance of providing any notice of sale. Tex. Prop. Code § 51.002(d). The Section also requires mortgage servicers to provide notice of the foreclosure sale 21 days in advance of the sale. Tex. Prop. Code § 51.002(b). Plaintiff argues that any failure by Defendants to provide notice in accordance with Section 51.002 violated applicable law, and thus, breached the terms of the Deed of Trust. Plaintiff specifically alleges she never received any notice and any notice that may have been provided was "nullified" because

---

[3]Defendants also note—and the Court agrees—that Plaintiff lacks standing to challenge MERS's assignment of the Deed of Trust to U.S. Bank because she was not a party to the assignment. *See Eskridge*, 2011 WL 2163989, at *5.

Plaintiff was under review for loan modification and Defendants rescinded acceleration of Plaintiff's loan. Pl.'s Resp. 27–28. For the reasons that follow, the Court finds Plaintiff's arguments without merit.

Defendants have submitted proof that they complied with Texas's notice requirements. They submitted a January 4, 2011 notice of default and a May 15, 2011 notice of sale and accompanying first class mail receipts—neither of which have been refuted by Plaintiff. Def.'s App. Ex. A-5, B-1. Plaintiff provides no evidence that Defendants forfeited  the right to send notices and proceed with the foreclosure while the parties were engaging in loan modification negotiations. Plaintiff relies on a Notice of Rescission of Acceleration of Loan Maturity contained in her summary judgment evidence to support her proposition that Defendants withdrew all notices and therefore violated the statute and breached the contract when they attempted to foreclosure. Pl.'s App. 30. The notice of rescission, however, is dated June 2, 2011, *after* Plaintiff filed suit in this matter, and well after Defendants provided the aforementioned notice of default and notice of sale. Plaintiff cannot conceivably rely on an *ex post* notice to evidence an *ex ante* breach.

In sum, the Defendants have submitted proof that they provided Plaintiff the notice legally required by Section 51.002 of the Texas Property Code. Plaintiff has failed to demonstrate a genuine issue of material fact on the notice issue.

3.     *Waiver*

Wiley maintains that even if she did breach the Note and Deed of Trust, that the Defendants waived their rights to act on any such breach, and therefore Defendants' acceleration of the Note and initiation of foreclosure proceedings constituted a breach of the contract. Pl.'s Am. Compl. ¶ 30; Pl.'s Resp. 23–26. Defendants counter that Plaintiff's waiver theory fails as a matter of law, because

10

Plaintiff has failed to provide any evidence that shows Defendants manifested the intent necessary to waive any rights under the Note and Deed of Trust and that also complies with the statute of frauds. Def.'s Br. 18. The Court agrees with the Defendants.

Under Texas law, a "[w]aiver is the intentional relinquishment of a right actually known, or intentional conduct inconsistent with claiming that right." *Ulico Cas. Co. v. Allied Pilots Ass'n*, 262 S.W.3d 773, 778 (Tex. 2008). To prove waiver, a party must show "(1) an existing right, benefit, or advantage held by a party; (2) the party's actual knowledge of its existence; and (3) the party's actual intent to relinquish the right, or intentional conduct inconsistent with the right." *Id.*

Plaintiff argues that the Defendants waived any supposed breach by the Plaintiff when "Defendants told Plaintiff to make payments in the amount of $1,030.98 and then told Plaintiff to stop making payments" and when "Defendants also told Plaintiff that the loan modification process takes a long time and that BAC would not foreclose during the loan modification process." Pl.'s Resp. 25–26. To the extent Plaintiff relies on oral representations by Defendants to modify her loan agreement, such modifications fail to comply with the statute of frauds. The Texas statute of frauds requires that "[a] loan agreement in which the amount involved in the loan agreement exceeds $50,000 in value is not enforceable unless the agreement is in writing and signed by the party to be bound or by that party's authorized representative." Tex. Bus. & Com. Code Ann. § 26.02(b). Furthermore, "both Texas state and federal courts have concluded that, generally, both the original loan and any alleged agreement to modify the original loan are governed by section 26.02 and must be in writing." *Montalvo v. Bank of Am. Corp.*, No. SA-10-CV-360-XR, 2012 WL 1078093, at *13 (W.D. Tex. March 30, 2012) (noting that oral modifications may be enforceable so long as they do not materially alter the obligations imposed by the original contract). The writing Plaintiff provides

is a March 30, 2010 statement from BOA that shows a total monthly payment amount of $1,030.98 or $1,395.25 under the HAMP trial plan. Pl.'s App. Ex. 1E. The statement also notes, however, that the "original loan remains in effect and unchanged during the trial period." *Id.* Such a statement clearly does not illustrate an intent on the part of Defendants to relinquish their rights to accelerate and foreclose under the contract based on Plaintiff's prior breach.

Even assuming the Court could rely on the alleged oral representations by the Defendants, Plaintiff's waiver argument remains flawed. Section 150 of the Restatement (Second) of Contracts—although apparently not considered or adopted by Texas courts—provides Plaintiff with a narrow legal footing. *Montalvo*, 2012 WL 1078093, at *15. Section 150 provides:

> Where the parties to an enforceable contract subsequently agree that all or part of a duty need not be performed or of a condition need not occur, the Statute of Frauds does not prevent enforcement of the subsequent agreement if reinstatement of the original terms would be unjust in view of a material change of position in reliance on the subsequent agreement.

Restatement (Second) of Contracts § 150 (1981). Even if the Court were to consider such an argument, however, Plaintiff cannot show reliance on the subsequent agreement because under her theory, she breached prior to any waiver. Restatement (Second) of Contracts § 150 cmt. d (1981) (noting that "if there is a waiver of performance after a failure of performance, the failure is not in reliance on the modifying agreement").

Accordingly, Plaintiff has failed to provide sufficient evidence—oral, written, or otherwise—to show Defendants waived any rights under the Note and Deed of Trust.

4.     *Breach of Duty of Good Faith and Fair Dealing*

Plaintiff also claims that the Defendants made misrepresentations concerning the proper amount of loan payments due on Plaintiff's account, which constituted a breach of the duty of good

faith and fair dealing. Pl.'s Am. Compl. ¶ 28. Defendants maintain Plaintiff's argument is inapplicable in this context and fails as a matter of law. Def.'s Br. 15. The Court agrees with the Defendants.

"Texas law does not recognize a general duty of good faith and fair dealing in arms-length transactions such as a mortgage loan agreement." *Gordon v. JPMorgan Chase Bank, N.A.*, No. H-12-0528, 2012 WL 1552050, at *3 (S.D. Tex. April 30, 2012) (citing *English v. Fischer*, 660 S.W.2d 521, 522 (Tex. 1983)). Plaintiff does not identify any provision in the Deed of Trust that creates a duty of good faith and fair dealing. Under Texas law, absent such language in the contract, a mortgagor-mortgagee relationship does not imply a duty of good faith. *See Fantroy v. Countrywide Home Loans, Inc.*, No. 3:06-CV-1889-K, 2007 WL 2254941, at *3 (N.D. Tex. 2007). Accordingly, Plaintiff's breach of contract claim under this theory also fails.

5.    *Breach of a Unilateral Contract*

Plaintiff also alleges Defendant BOA breached a unilateral contract between the parties when BOA initiated foreclosure proceedings after promising to provide a loan modification if Plaintiff submitted additional financial documentation. Pl.'s Am. Compl. ¶ 27 ("Plaintiff's reliance on Defendants' promises constituted a unilateral contract which was breached by the Defendants when [they] posted Plaintiff's property for foreclosure sale."). Defendants move for summary judgment on the grounds that any alleged contract, unilateral or otherwise, fails to comply with the statute of frauds. Def.'s Br. 15–17. The Court concludes that Plaintiff's have failed to submit sufficient summary judgment evidence to establish the existence of a valid and enforceable unilateral contract.

Under Texas law, "[a] unilateral contract . . . is 'created by the promisor promising a benefit if the promisee performs'" and becomes enforceable once the promisee performs. *Vanegas v. Am. Energy Servs.*, 302 S.W.3d 299, 302 (Tex. 2009) (quoting *Plano Surgery Ctr. v. New You Weight*

*Mgmt. Ctr.*, 265 S.W.3d 496, 503 (Tex. App.-Dallas 2008, no pet.)); *see also Smith v. CitiMortgage, Inc.*, No. 4:10CV693, 2012 WL 629058, at *3 (E.D. Tex. Feb. 27, 2012) (noting that a unilateral contract is merely a non-binding illusory promise until the promisee accepts the offer by way of rendering performance), *adopted*, 2012 WL 1080593 (E.D. Tex. March 30, 2012).

Here, Wiley alleges BOA promised to modify her loan if she provided additional documentation, thereby creating a unilateral contract. Pl.'s Am. Compl. ¶ 27; Pl.'s Resp. 22. The Court finds Plaintiff's claims untenable for a variety of reasons. First, any contract modifying the Note or Deed of Trust would be subject to the statute of frauds. *See* Tex. Bus. & Com. Code Ann. § 26.02(b) (requiring that a loan agreement for which the amount involved exceeds $50,000 be signed and in writing to be enforceable). Plaintiff's Note and Deed of Trust secured a loan in the amount of $100,000. Def.'s App. Ex. A. Therefore, Plaintiff's claim for breach of a unilateral contract that would modify the underlying loan agreement necessitates that the unilateral contract be in writing to be enforceable. Furthermore, Plaintiff's prior HAMP trial plan reinforces the requirements of the statute of frauds and notes that "the Loan Documents will not be modified unless and until . . . (ii) [Wiley] receive[s] a fully executed copy of a Modification Agreement . . . ." Pl.'s App. 1C. Second, Plaintiff's summary judgment evidence does not support her allegations. Plaintiff argues that after submitting her financial documentation, on or around September 2, 2010 a representative for Defendants informed her that she had been approved for a loan modification. Pl.'s Am. Compl. ¶ 27; Pl.'s Resp. 22. In support, Plaintiff relies on Defendants' call logs. Pl.'s App. Ex. 2. After a close reading of the call logs, however, the entry for September 2, 2010 states only the following: "SPOKE WITH BRWR AND VERIFIED INCOME, EXPLAINED THE TRIAL MOD AND THE PURPOSE OF A LOAN MOD." *Id.*   At best, what can be drawn from Plaintiff's own evidence is

14

an inference that the September 2, 2010 conversation with Defendants related to Plaintiff's approval

for a trial modification, not an agreement that Defendants had modified Plaintiff's loan following her

submission of additional financial documentation. Plaintiff has simply failed to produce any evidence

the parties formed an enforceable unilateral contract that was breached when Defendants failed to

provide a permanent loan modification.

Plaintiff has failed to produce sufficient evidence to support any of her theories of breach of

contract and anticipatory breach of contract. Accordingly, Defendants' Motion for Summary

Judgment on Plaintiff's breach of contract claim and anticipatory breach contract claim is

**GRANTED.**

B.     *Unreasonable Collection Efforts*

Wiley next alleges that Defendants' conduct during the loan modification process and

ensuing foreclosure proceedings constituted an actionable tort for unreasonable collection efforts.

Pl.'s Am. Compl. ¶¶ 32–37; Pl.'s Resp. 38–41. Specifically, Plaintiff alleges the following acts by

Defendants constituted unreasonable collection efforts: failing to provide information regarding her

loan modification; promising not to foreclose; mistakenly stating she was approved for a loan

modification; failing to modify Plaintiff's loan; imposing unnecessary charges on Plaintiff's account;

and damaging Plaintiff's credit rating. Pl.'s Resp. 39. Defendants move for summary judgment on the

grounds that Plaintiff has failed to provide any evidence of acts on the part of Defendants that qualify

as unreasonable collection efforts. Def.'s Br. 21. The Court agrees with Defendants and finds Plaintiff

has failed to submit sufficient summary judgment evidence to establish a genuine issue of material

fact as to whether Defendants engaged in unreasonable collection efforts.

Unreasonable collection efforts has evolved in Texas courts as an intentional tort covering

a variety of conduct—so much so, that the elements of unreasonable collection have often evaded precise definition. *Narvaez v. Wilshire Credit* Corp., 757 F.Supp.2d 621, 635 (N.D. Tex. 2010) ("[T]he elements are not clearly defined and the conduct deemed to constitute an unreasonable collection effort varies from case to case.") (quoting *EMC Mortg. Corp. v. Jones*, 252 S.W.3d 857, 868 (Tex. App.-Dallas 2008)). Texas Courts have accepted, however, that the tort may be defined as "efforts that amount to a course of harassment that was willful, wanton, malicious, and intended to inflict mental anguish and bodily harm." *EMC Mortg. Corp.*, 252 S.W.3d at 868 (quoting *Montgomery Ward & Co. v. Brewer*, 416 S.W.2d 837, 844 (Tex. Civ. App.-Waco 1967)). Debt collection efforts have been found to be unreasonable—and therefore tortious—when a lender attempts to collect a debt that was not owed or had been paid in full. *See Narvaez*, 757 F.Supp.2d at 635.

In this case, Plaintiff has failed to produce any evidence that Defendants engaged in unreasonable collection efforts. First, merely failing to provide information does not constitute an unreasonable collection effort. *Narvaez*, 757 F.Supp.2d at 636. Second, the Court declines the invitation to find that promising not to foreclose and subsequently foreclosing amounts to a willful, wanton, malicious course of harassment. Third, Plaintiff's own summary judgment evidence illustrates she was never approved for a permanent loan modification. Plaintiff's call log does not support the assertion that Defendants approved a loan modification in September 2010, it merely notes the Defendants "EXPLAINED THE TRIAL MOD AND THE PURPOSE OF A LOAN MOD." Pl.'s App. 34. Furthermore, the HAMP trial plan makes clear that "the Loan Documents will not be modified unless and until . . . (ii) [Wiley] receive[s] a fully executed copy of a Modification Agreement." Pl.'s App. 14. Plaintiff never alleges she received such an agreement. Fourth, Plaintiff provides a list of alleged fees and asks the Court to conclude that these fees are

somehow improper without providing any evidence or explanation as to how such fees are improper, let alone how they constitute harassment intended to inflict mental anguish and bodily injury. Pl.'s Resp. 40. Finally, Plaintiff alleges—without any summary judgment evidence to provide support—that Defendants acts caused her severe mental anguish and ridicule in the community. *Id.* at 39.

Plaintiff has failed to produce any summary judgment evidence that Defendants' conduct amounted to a willful, wanton, or malicious course of harassment that was intended to inflict mental anguish and bodily harm. Accordingly, Defendants' Motion for Summary Judgment on Plaintiff's Unreasonable Debt Collection Efforts claim is **GRANTED.**

C.      *Violations of the Texas Debt Collection Practices Act*

The Court now turns to Wiley's allegations Defendants violated various provisions of the Texas Debt Collection Practices Act ("DCPA"). Tex. Fin. Code §§ 392.001 et seq. Plaintiff claims Defendants violated the following provisions of the DCPA: §§ 392.301(a)(8); 392.303(a)(2); 392.304(a)(8); and 392.304(a)(19). Defendants move for summary judgment on the grounds that Plaintiff has failed to produce any evidence that Defendants actions were anything more than ordinary debt collection. Def.'s Br. 21. Again, the Court finds that Plaintiff has failed to meet her summary judgment burden.

The DCPA prohibits a variety of conduct by debt collectors in the course of debt collection. *See e.g.* Tex. Fin. Code §§ 392.301–.304. Subsection 392.301(a)(8) of the Texas Finance Code prohibits a debt collector from using threats, coercion, or attempts to coerce, including "threatening to take an action prohibited by law." Tex. Fin. Code § 392.301(a)(8). A "threat" is defined as "a communicated intent to inflict harm or loss on another or another's property." Black's Law

Dictionary 1618 (9th ed. 2009). "Coercion" is defined as "compulsion by physical force or threat of physical force." *Id.* at 294. Plaintiff argues Defendants violated this subsection by accelerating the Note and foreclosing without proper authority. Pl.'s Resp. 37. As discussed *infra* Part III. Section A., Defendants had the authority to deny Plaintiff's loan modification and initiate foreclosure proceedings. Plaintiff fails to even allege, let alone demonstrate with summary judgment evidence, any factual allegations that Defendants engaged in any threats or coercion beyond the ordinary correspondence involved in loan modifications and foreclosure proceedings.

Subsection 392.303(a)(2) of the Texas Finance Code prohibits debt collectors from "collecting or attempting to collect interest or a charge, fee, or expense incidental to the [debt] obligation *unless* the interest or incidental charge, fee, or expense is expressly authorized by the agreement creating the obligation or legally chargeable to the consumer." Tex. Fin. Code § 392.303(a)(2) (emphasis added). Plaintiff provides a print-out of various charges that were made to her account and concludes Defendants violated the statute. Pl.'s App. 43–44. Plaintiff provides no evidence and no explanation, however, as to how any of these charges were unauthorized. Plaintiff's conclusory allegations fall short of creating a genuine issue of material fact to survive summary judgment as to this subsection. *See Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

Subsections 392.304(a)(8), and (19) of the Texas Finance Code provide similar protections to consumers. Subsection 392.304(a)(8) prohibits a debt collector from "misrepresenting the character, extent, or amount of a consumer debt . . . ." Tex. Fin. Code § 392.304(a)(8). Subsection 392.304(a)(19) operates effectively as a "catch-all" provision, prohibiting a debt collector from "using any other false representation or deceptive means to collect a debt or obtain information concerning

18

a consumer." Tex. Fin. Code § 392.304(a)(19). Plaintiff alleges Defendants' oral statements promising not to foreclose and promising to provide a permanent loan modification constitute violations of the statutes. Pl.'s Resp. 37. Plaintiff fails to produce evidence of any specific false or deceptive statements by Defendants that could constitute a violation. As discussed *infra* Part III. Section B., under the terms of the HAMP trial plan Defendants were not obligated to provide a loan modification upon Plaintiff successfully making payments, and Plaintiff's own evidence does not support the conclusion she was promised a permanent loan modification to stave off foreclosure. Such general allegations by Plaintiff without any evidentiary support, are insufficient to survive summary judgment. *See King v. Wells Fargo Bank, N.A.*, No. 3-11-CV-0945-M-BD, 2012 WL 1205163, at *3 (N.D. Tex. March 20, 2012) (recommending dismissal of Plaintiff's DCPA claims) *adopted*, 2012 WL 1222659 (N.D. Tex. April 11, 2012). Accordingly, Defendants' Motion for Summary Judgment on Plaintiff's DCPA claims is **GRANTED.**

D.     *Negligent Misrepresentation/Gross Negligence*

       Wiley also argues Defendants' conduct regarding her attempts at loan modification constituted an actionable negligent misrepresentation. Pl.'s Am. Compl. ¶¶ 48–51. Specifically, Plaintiff reiterates her accusations that Defendants' statements related to promises to provide a loan modification, promises not to foreclose, and payment amounts during the trial period were negligent misrepresentations that constituted gross negligence. Defendants move for summary judgment on the grounds that Plaintiff's claims fail as a matter of law as they are barred by the economic loss doctrine and merely allege promises of future conduct. Def.'s Br. 22–24. The Court finds Plaintiff has failed to produce sufficient summary judgment evidence to maintain a viable negligent misrepresentation claim.

Under Texas law, the elements of a negligent misrepresentation claim are:

(1) the representation is made by a defendant in the course of his business, or in a transaction in which he has a pecuniary interest; (2) the defendant supplies "false information" for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffers pecuniary loss by justifiably relying on the representation.

*Fed. Land Bank Ass'n v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991).

Additionally, "the false information complained of in a negligent misrepresentation claim 'must be a misstatement of an existing fact rather than a promise of future conduct.'" *Montgomery v. SunTrust Mortg., Inc.*, No. 3:10-CV-733-F, 2012 WL 1353087, at *6 (N.D. Tex. April 19, 2012) (citing *Scherer v. Angell*, 253 S.W.3d 777, 781 (Tex.App.-Amarillo 2007, no pet.)). Plaintiff's claims relating to promises to provide a loan modification and promises not to foreclose, even if they were supported by summary judgment evidence, constitute promises of future conduct and cannot form the basis of a negligence misrepresentation claim. Plaintiff argues Defendants told her she had already been approved for a loan modification, however, as discussed *infra*, such a conclusion is contradicted by Plaintiff's own summary judgment evidence.

Plaintiff's negligence claims are also barred by the economic loss doctrine. With regard to the fourth element of a negligence action, the economic loss doctrine helps Courts differentiate between pecuniary losses that are properly recoverable under a negligence theory, and those that lie in contract. The economic loss doctrine dictates that "[w]hen the plaintiff's only harm is an economic loss caused by the defendant's failure to perform a contract, the defendant has breached a contractual duty, not a tortious one." *Belanger v. BAC Home Loans Servicing, L.P.*, No. W-11-CA-00086, 2011 WL 6987152, at *3 (W.D. Tex. Dec. 9, 2011) (citing *Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex. 1986)). "Thus, in order for a tort duty to arise out of a contractual duty,

20

i.e., negligent failure to perform a contract, the liability must arise independent of the fact that a contract exists between the parties; the defendant must breach a duty imposed by law rather than by contract." *Kazmi v. BAC Home Loans Servicing, L.P.*, No. 4:11-CV-375, 2012 WL 629440, at *14 (E.D. Tex. Feb. 3, 2012) (citing *Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 494 (Tex. 1991)) *adopted*, 2012 WL 629433 (E.D. Tex. Feb 27, 2012). Therefore, when a plaintiff alleges only economic loss arising out of a contractual relationship between the parties, the plaintiff is precluded from proceeding under a negligence cause of action. *See Defranceschi v. Wells Fargo Bank, N.A.*, No. 4:10-CV-455-Y, 2011 WL 3875338, at *7 (N.D. Tex. Aug. 31, 2011).

Plaintiff attempts to circumvent the economic loss doctrine by alleging a variety of damages unrelated to the Note and Deed of Trust including attorneys' fees, lost time, emotional distress, and a lower credit rating. Pl.'s Resp. 47. Such allegations, are not sufficient to avoid the economic loss doctrine in this case. First, under Texas law, reasonable attorney's fees are not recoverable in a negligence action. *See Gulf States Utilities Co. v. Low*, 79 S.W.3d 561, 568 (Tex. 2002). Similarly, Texas law does not recognize negligent infliction of emotional distress as a viable cause of action. *See Twyman v. Twyman*, 855 S.W.2d 619, 621 (Tex. 1993). Although the Court is unconvinced that Plaintiff could recover for lost time or for a lower credit rating, Plaintiff fails to produce any evidence of such damages beyond her own affidavit. Even without such considerations, it is clear Plaintiff's negligent misrepresentation claim and her alleged damages flow solely from the obligations created by the Note and Deed of Trust and would not exist but for the contractual relationship between the parties. *See Myers v. Bank of America, N.A.*, No. 4:11-cv-457, 2012 WL 1107687, at *3 (E.D. Tex. March 31, 2012). Accordingly, Defendants' Motion for Summary Judgment on Plaintiff's negligent

misrepresentation and gross negligence claims is **GRANTED**.[4]

## IV.

## CONCLUSION

For the foregoing reasons, the Court finds Plaintiff has failed to put forth sufficient summary

judgment evidence to create a genuine issue of material fact with respect to her claims for breach of

contract and anticipatory breach of contract, unreasonable collection efforts, violations of the

DCPA, and negligent misrepresentation and gross negligence. Accordingly, the Court finds

Defendants' Motion for Summary Judgment should be, and hereby is, **GRANTED**.

**SO ORDERED.**

**Signed May 30, 2012**

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE

---

[4] Plaintiff's negligent misrepresentation and gross negligence claims are based on identical factual allegations and grouped together in Plaintiff's First Amended Complaint. Plaintiff has failed to provide sufficient summary judgment evidence to show Defendants' conduct constituted negligence, let alone gross negligence. In such circumstances, where Plaintiff has failed to prove sufficient facts to recover actual damages under a negligence theory of recovery, Plaintiff has also failed to show any right to recovery of exemplary damages under a gross negligence theory and summary judgment should be granted as to both claims. *See Smith v. JPMorgan Chase Bank, N.A.*, No. 4:10-cv-533, 2011 WL 6217783, at *7 (E.D. Tex. Dec. 14, 2011); *B.F. Jackson, Inc. v. CoStar Realty Info., Inc.*, No. H-08-3244, 2009 WL 1812922, at *7 n.38 (S.D. Tex. May 20, 2009).